**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MITCHELL WOJTANEK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **09 CV 202** |
| | ) | |
| **v.** | ) | **Magistrate Judge Michael T. Mason** |
| | ) | |
| **CONSOLIDATED CONTAINER** | ) | |
| **CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

On January 13, 2009, *pro se* plaintiff Mitchell Wojtanek filed a complaint [1]

against defendant Consolidated Container Company ("Consolidated") alleging violations

of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Before

the Court is Consolidated's motion for summary judgment [89]. For the reasons set

forth below, Consolidated's motion is granted.[1]

**I.    Relevant Facts[2]**

Consolidated manufactures rigid plastic containers for consumer, agricultural and

industrial chemical industries. (Def.'s LR 56.1 Statement of Facts ("SOF") [91] ¶ 1.) On

February 11, 2002, Consolidated hired Wojtanek to work at its Elk Grove Village facility

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiff's claim's occurred in this district. On August 11, 2010, the parties consented to the jurisdiction of the undersigned Magistrate Judge for all future proceedings pursuant to 28 U.S.C. § 636(c) [57].

[2] These facts are taken from the parties' Local Rule 56.1 statements of fact and supporting documents, but, as explained in more detail below, only to the extent that those submissions are in compliance with the Local Rule.

in the classification of General Plant Maintenance ("GPM"). (*Id.* ¶ 2; Wojtanek Aff. [114] ¶ 3.) At the time he was hired, plaintiff was 61 years old. (Def.'s SOF ¶ 4; Wojtanek Aff. ¶ 2.) Plaintiff's job duties included repairing and overhauling machines, and making parts for machines. (Def.'s SOF ¶ 7.)

The terms and conditions of plaintiff's employment were subject to the collective bargaining agreement ("CBA") between Consolidated and the International Association of Machinists and Aerospace Workers, District No. 8 ("Union").[3] (Def.'s SOF ¶ 8; Ross Decl. [102] Ex. A.) The CBA provides a progressive disciplinary policy. (Ross. Decl. Ex. A at 30.) Under that policy, a first offense results in a verbal warning or counseling; the second offense results in a written warning; the third offense results in a suspension; and the fourth offense results in a termination. (*Id.*) Despite this policy, Consolidated retains the managerial rights to impose the level of discipline it deems appropriate for a particular infraction. (Ross Decl. ¶ 12.) This includes the right to suspend an employee pending possible termination while the investigation of the incident is completed. (*Id.*)

On January 14, 2003, plaintiff received his first disciplinary warning for failing to perform the requirements of his job. (Ross Decl. ¶ 13.) The Corrective Disciplinary Action Form ("Disciplinary Form") memorializing the incident indicates that Wojtanek "could not fix the box maker." (*Id.* at Ex. B.) It further reveals that Wojtanek was given a verbal warning and that he "refused to sign" the Disciplinary Form. (*Id.*) The

---

[3] Plaintiff denies that his employment with Consolidated was subject to the CBA, but only as a result of his claims that the Union abandoned him when he turned 64 and failed to provide him proper representation. (Pl.'s Resp. to SOF ¶¶ 8, 9; *see also, Wojtanek v. IAM Union Dist. 8*, 08 C 3080 (Pallmeyer, J.)) However, plaintiff has provided no evidence that his employment was not in fact governed by the CBA and admits in his deposition that he became a member of the Union. (Wojtanek Aff. ¶ 2.)

Disciplinary Form was signed by a Union representative, Wojtanek's supervisor, the production manager and a human resources representative. *Id.* Plaintiff denies having received the Disciplinary Form and "presume[s]" that it was created in retaliation for his complaints to management about unsafe conditions at a recent holiday party. (Pl.'s Resp. to SOF [115] ¶ 10; Wojtanek Dep. Tr. [91-2] 23-24.)

On November 1, 2005, plaintiff was given a verbal warning for "unsatisfactory work." (Ross Decl. [95], Ex. C.) He again refused to sign the Disciplinary Form. (*Id.*) At his deposition, plaintiff denied knowing about this disciplinary action at the time it occurred, but further testified that he had no reason to believe that the Disciplinary Form was an inaccurate depiction of his performance. (Wojtanek Dep. Tr. 25.)

Plaintiff's next disciplinary action involved fluorine, a toxic and corrosive chemical. (Ward Decl. ¶ 5; Ross Decl., Ex. D.) The fluorine system, which is located in the blend room, regulates the fluorine mixture levels. (Ward Decl. ¶ 5.) On July 28, 2006, plaintiff entered the blend room alone, contrary to Consolidated's rules, and made improper adjustments to the fluorine system. (*Id.* ¶ 9.) The adjustments resulted in dangerously high fluorine levels and the need to replace two valves at a cost of approximately $2,000. (*Id.* ¶ 10.) Plaintiff's conduct, which put himself and the plant at risk, resulted in a suspension and was documented in another Disciplinary Form. (Ross Decl., Ex. D.) That form was signed by Wojtanek, his supervisor, the production manager and a human resources representative. (*Id.*) Wojtanek was allowed to continue working during his suspension. (*Id.*)

In a letter dated July 31, 2006 to operations manager Robert Ward, Wojtanek explained his understanding of the fluorine incident. (Def.'s SOF, Ex. C.) Wojtanek

explained that he entered the blend room to make adjustments, after which the fluorine levels continued to rise. (*Id.*) He also stated that despite executing "normal procedure[s]" he did not have "any success" in lowering the fluorine levels. (*Id.*)

In his current submissions, Wojtanek now denies entering the blend room alone, and instead alleges that his third shift supervisor, Digol Jacob, was seen by his co-workers entering the blend room in order to purposely sabotage the fluorine levels. (Wojtanek Aff. ¶ 30.) Wojtanek also contends that during a meeting on July 28 regarding the fluorine incident, maintenance supervisor Bob Beebe and Union Chairman Francisco Zuniga told him it was "time to retire." (*Id.* ¶ 29.)

On August 1, 2006, plaintiff was suspended pending possible termination because, after working for three and a half hours, he was unable to repair the trimmer machine. (Ross Decl. ¶ 16 & Ex. E.) Another employee was able to repair the trimmer in less than fifteen minutes. (Ross Decl. ¶ 16.) At his deposition, plaintiff admitted that he worked for three and a half hours to repair the trimmer, and disputes only the date on which he did so. (Pl.'s Dep Tr. 93.) Despite the August 1 disciplinary action, time records purportedly reveal that Wojtanek returned to work the third shift on August 1-3, 2006. (*See* Pl.'s St. of Add'l Facts ("SOAF") [116], Ex. MW-1 at 1.)

Neither party disputes that Wojtanek first learned of his suspension from Jacob when he reported to work on the evening of August 4, 2006. (Def.'s SOF ¶ 23 & Ex. C.) According to Wojtanek, when he reported to work that evening, "all traces of [his] employment were removed." (Wojtanek Aff. ¶ 34.)

On August 7, 2006, plaintiff wrote a letter to Consolidated's Ethics Compliance Office complaining of his suspension and unfair treatment by his supervisor Jacob.

4

(Def.'s SOF, Ex. C.)  According to Wojtanek, Jacob had been trying to fire him despite his continued hard work.  (*Id.*)  In another letter dated August 7, 2006, and addressed to the Union, Wojtanek reiterated his complaints of an improper suspension and harassment.  (Pl.'s SOAF, Ex. 6-B at 1.)  An August 9, 2006 letter to the Union includes similar complaints.  (*Id.* at 6.)

Union Chairman Zuniga prepared a grievance on Wojtanek's behalf on August 9, 2006 alleging "unfair and unjust practice by management."  (Pl.'s SOAF, Ex. 13-B at 3.)  Zuniga requested a step four grievance meeting and further requested that Wojtanek be allowed to return to work.  (*Id.*)

Around the same time, Wojtanek began searching for another job.  (Pl.'s Dep. Tr. 347.)  On August 10, 2006, plaintiff prepared an application for employment at Pactiv Corporation.  (Def.'s SOF, Ex. C.)  Plaintiff prepared a second application for Pactiv on August 15, 2006.  (Pl.'s SOAF, Ex. 19-B at 8-9.)  Both applications listed his period of employment with Consolidated as February 11, 2002 through the "present."  (Def.'s SOF, Ex. C; Pl.'s SOAF, Ex. 19-B at 9.)  At his deposition, plaintiff testified that he believed he was still employed with Consolidated as of August 10, 2006.  (Pl.'s Dep. Tr. 104.)

On August 15, 2006, plaintiff spoke with Consolidated's personnel clerk Pat Whelan regarding his employment status and medical benefits.  (Whelan Decl. [92], ¶ 5; Pl.'s Dep. Tr. 378.)  According to plaintiff, he called to ask why he no longer had medical insurance, to which Whelan responded that he could apply for Cobra benefits.  (Pl.'s Dep. Tr. 378.)  Wojtanek also testified that he told Whelan he wanted a grievance meeting as soon as possible.  (*Id.*)  Whelan's handwritten notes documenting the

August 15 conversation tell a different story. (Whelan Decl., Ex. A.) Those notes indicate that plaintiff told Whelan he had another job and that he would like to stop the fourth step grievance meeting. (*Id.*) Whelan claims that she explained to Wojtanek that in order to prepare Cobra documents, she would have to process separation paperwork. (Whelan Decl. ¶ 7 & Ex. A.) Wojtanek purportedly agreed. (Whelan Decl. ¶ 7.) At his deposition, plaintiff denied telling Whelan that he had another job. (Pl.'s Dep. Tr. 379.)

After the conversation with plaintiff, Whelan told human resources manager Mike Ross that plaintiff had resigned and that she would be processing his termination. (Whelan Decl. ¶ 9; Ross Decl. ¶ 20.) Union Business Agent Rufus Eskew had separately informed Ross that plaintiff had resigned. (Ross Decl. ¶ 20.) Ross, who has decision-making authority over terminations, denies ever making any decision to terminate plaintiff's employment or to otherwise authorize the termination of his employment. *Id.* According to Ross, plaintiff's resignation came before Consolidated had an opportunity to do so. (*Id.*) The separation paperwork, which Whelan prepared, is dated August 15, 2008 and lists Wojtanek's last day as August 3, 2006. (Pl.'s SOAF, Ex. A.)

On August 17, 2006, plaintiff received a written offer of employment as a maintenance mechanic from Pactiv, which he accepted on the same day.[4] (Def.'s SOF, Ex. C.) Despite this offer, and Consolidated's belief that Wojtanek resigned, the fourth step grievance meeting took place on August 23, 2006. (Ross Decl. ¶ 22.) According

---

[4] Plaintiff was terminated from Pactiv on November 17, 2006 for being "too slow." (Wojtanek Dep. Tr. 389.) As a result of that termination, plaintiff sued the Union and Pactiv, again alleging age discrimination. *See Wojtanek v. District Lodge No. 8,* 08 C 7074 (Lefkow, J.) and *Wojtanek v. Pactiv Corp.*, No. 09 C 6551 (Norgle, J.)

to Ross, the discussion during that meeting was limited to the issue of whether the company would contest plaintiff's unemployment compensation claim, possible severance compensation and Cobra documentation. (*Id.*) Handwritten notes from the meeting corroborate this representation. (*See* Pl.'s SOAF, Ex. 13-B at 4-6.) At some point during the meeting, a "Severance Agreement" was prepared to memorialize the parties' purported agreement regarding, among other things, unemployment compensation and Cobra benefits. (Pl.'s SOAF. ¶ 19 & Ex. 13-B at 1-2.)

Plaintiff denies Consolidated's description of the grievance meeting and claims that it was humiliating and unfair. (Pl.'s SOAF ¶ 18 & Ex. 14-B at 5.) According to Wojtanek, Consolidated representatives continuously tried to force him to admit that he resigned on August 1, 2006. (*Id.* ¶¶ 14-15 & Ex. 14-B at 5.) In any event, it is undisputed that Wojtanek never signed the Severance Agreement. (*Id.* ¶ 20.)

On August 8, 2006, Consolidated posted a job listing for plaintiff's former GPM position. (Ross Decl. ¶ 25 & Ex. F.) When no qualified existing employees from within Consolidated were hired, Consolidated sought applications from outside the company. (*Id.* ¶ 26.) Eventually, on October 6, 2006, former Consolidated employee Giuseppe Giovenco was hired to fill Wojtanek's position.[5] (*Id.* ¶ 27, Ex. G.) Personnel documents reveal that Giovenco was born in 1939.[6]

---

[5] Consolidated's "Change of Status" form indicates a hire date of October 9, 2006. (Ross Decl. Ex. G.)

[6] We note that this date differs from ¶ 37 of Ross's Declaration, which indicates that Giovenco was born in 1940. Having retained the unredacted version of Giovenco's personnel file submitted in connection with defendant's motion for leave to file sealed documents [103], we can confirm that those documents indicate that he was in fact born in 1939. This discrepancy is of no moment, as Giovenco is undoubtedly older than Wojtanek, who was born in 1941.

On January 25, 2007, Wojtanek filed a charge of age discrimination with the Illinois Department of Human Rights ("IDHR") (*See* "Charge of Discrimination," attached to Pl.'s Compl.)  On September 8, 2008, after two rounds of investigations, IDHR dismissed plaintiff's charge for lack of substantial evidence.  (McInnis Decl. [94], Ex. A.)  The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of IDHR on November 19, 2008.  (*See* "Dismissal and Notice of Rights," attached to Pl.'s Compl.)  This action followed and, after a tumultuous discovery process, defendant filed the pending motion.

## II.    Summary Judgment Standard

Summary judgment is appropriate where the evidence of record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is no genuine dispute of material fact when "no reasonable jury could find in favor of the nonmoving party."  *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010) (quoting *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The court must construe all facts and draw all inferences from the record in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In addition, "[c]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact."  *Hall v. Bodine Elec. Co.*, 276 F.3d 345,

354 (7th Cir. 2002). In the same vein, affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991).

## III.    Analysis

### A.    Compliance with Local Rule 56.1

Before addressing the merits of defendant's motion for summary judgment, we must first address plaintiff's failure to comply with Local Rule 56.1. Under that rule, a party moving for summary judgment must file, among other things, "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law...." LR 56.1(a)(3); *Cracco v. Vitran Exp.*, Inc., 559 F.3d 625, 632 (7th Cir. 2009). The statement must consist of short numbered paragraphs, including within each paragraph references to the affidavits, parts of the record and other supporting materials relied upon. LR 56.1(a). Each party opposing a motion for summary judgment must then file a response to the movant's statement that contains (1) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed; (2) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, record, and other supporting materials; and (3) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavit, parts of the record and other supporting materials relied upon. LR 56.1(b).

The purpose of Local Rule 56.1 is to assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). It is well settled that the District Court is entitled to expect strict compliance with LR 56.1 and does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with that rule, chooses to deem the opposing party's facts admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[7]

A court may also disregard any additional facts proposed by a party if those facts are not properly presented in compliance with Local Rule 56.1(b). *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005). Indeed, a court may disregard any additional facts provided in a party's response to the opposing party's statement of facts, in a responsive memorandum, or in an accompanying affidavit, if those facts are not set forth in a LR 56.1(b) statement of additional facts. *See, e.g., Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (reiterating that Local Rule 56.1(b) "provides the only acceptable means of ... presenting additional facts.") (citations omitted).

Here, in response to Consolidated's motion for summary judgment, plaintiff has submitted a response brief [113], a response to Consolidated's LR 56.1 statement of facts [115], his own LR 56.1 statement of additional facts and accompanying exhibits

---

[7] We point out that the court's discretion under LR 56.1 remains broad even in the case of a *pro se* litigant. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "although courts are required to give liberal construction to *pro se* pleadings," it is "well established that *pro se* litigants are not excused from compliance with procedural rules.").

[116], and an affidavit [114].[8]  Despite having been served with the "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" [96], which sets forth the requirements of LR 56.1, plaintiff's attempt to comply with those requirements falls short.

First, with respect to plaintiff's response to defendant's statement of material facts, Wojtanek disputes the majority of those facts, but almost always omits citations to materials in the record illustrating that dispute.  Where he has provided citations to documents, those citations rarely support his response.  Although plaintiff's own statement of additional facts includes citations to documents in the record, many of the documents cited do not support the facts he is asserting.  He often cites to multi-page exhibits, without a specific page number, apparently expecting the Court to wade through those exhibits.  *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").  The documents include undated letters, unauthenticated and incomplete versions of documents from the IDHR proceedings, and unauthenticated and incomplete portions of depositions from other litigation.  Further, both of plaintiff's Rule 56.1 statements are improperly filled with speculation, hearsay and legal conclusions.  *See Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1072 (N.D. Ill. 2007).

For all of these reasons, we have deemed defendant's statement of facts admitted and have considered only those additional relevant and material facts that plaintiff has properly presented and supported with admissible evidence.  *See U.S. v.*

---

[8] Plaintiff also filed an unsolicited sur-reply [126], which we have not considered.

*5443 Suffield Terrace*, 607 F.3d 504, 510-11 (7th Cir. 2010) (noting that it is "not the district court's job to sift through the record and make [a party's case] for him.").

### B. Plaintiff's Termination Claim

Plaintiff has alleged that Consolidated unlawfully terminated his employment in violation of the ADEA, which "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Communications Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); 29 U.S.C. § 623(a)(1). As the Supreme Court has recently explained, an ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Services, Inc.*, --- U.S. ----, 129 S.Ct. 2343, 2351 (2009). "In other words, proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010) (citing *Gross*, 129 S.Ct. at 2352).

A plaintiff may establish age discrimination under the direct method or the indirect method. *Van Antwerp*, 627 F.3d at 297. Wojtanek has not specified under which method he brings his claims, so we address both methods below. However, before doing so, and because either method requires a finding that the plaintiff was in fact terminated, we address Consolidated's contention that Wojtanek was not terminated, but resigned on his own accord. As discussed above, plaintiff denies having ever resigned. Although plaintiff's own statements have been inconsistent, and are inconsistent with documents in the record, as we must, we will view the facts in his favor and accept his assertion that he was terminated when he went to work on August

12

4, 2006 and that his termination was processed on August 15, 2006. (Compl. ¶ 6; Pl.'s SOAF ¶ 1 & Ex A; Wojtanek Aff. ¶ 34;) However, even accepting Wojtanek's contention that he was terminated, his claims of age discrimination fall short under both methods.

### 1. Direct Method

Under the direct method, Wojtanek must produce direct or circumstantial evidence that he was terminated because of his age. *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). "Direct evidence typically requires an admission of discriminatory animus, but a plaintiff may also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences." *Id.* Circumstantial evidence comes in many forms, including suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, or evidence showing that similarly situated employees outside the protected class received systematically better treatment. *Van Antwerp*, 627 F.3d at 299 (quoting *Sun v. Bd. of Trs.*, 473 F.3d 799, 812 (7th Cir. 2007)).

Here, there is certainly no direct admission by Consolidated or "a smoking gun," of discriminatory animus. *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005). As for circumstantial evidence, Wojtanek has provided little. Dispersed throughout Wojtanek's various submissions are allegations that certain Consolidated employees made comments to him regarding his age. At a July 28, 2006 meeting regarding the fluorine incident, Wojtanek alleges that Bob Beebe and Union Chairman Zuniga told him

it is "time to retire."  (Wojtanek Aff. ¶ 29).[9]  Wojtanek has also alleged that his

supervisor, Jacob, called him an "old prick" in April of 2006, (Pl.'s SOAF ¶ 30; Wojtanek

Dep. Tr. 188), and that plant manager Sean Guinan told him the company was

"weeding out old crap."  (Pl.'s Resp to Def.'s SOF ¶ 35-36).  As to the latter comments

by Jacob and Guinan, Wojtanek has failed to explain when Guinan's comment was

made in relation to his termination, and what role, if any, Jacob and Guinan played in

any termination decision.  *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 674 (7th

Cir. 2006) (noting that "isolated comments that are no more than 'stray remarks' in the

workplace are insufficient to establish that a particular decision was motivated by

discriminatory animus."); *see also Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d

608, 612 (7th Cir. 2005) (holding that remarks made by someone uninvolved in making

employment decisions do not constitute direct evidence of discrimination).

We recognize that the comments by Beebe and Zuniga raise a red flag as they

were purportedly made a few days prior to the alleged termination.  Such comments can

prove actionable if they were also (1) made by the decision maker or one having input

on the employment decision in question, and (2) were made in reference to the adverse

employment action complained of.  *Merillat*, 470 F.3d at 674.  But, again, Wojtanek has

failed to establish whether Beebe and Zuniga were involved in the employment

decision.  In fact, Wojtanek alleges that it was Robert Ward who made the decision to

---

[9] At his deposition, Wojtanek also testified vaguely that Jacob told him "it's time to retire" at some point in July or August of 2006.  (Wojtanek Dep. Tr. 188.)

terminate him after he sent the July 31, 2006 letter complaining of poor treatment.[10] (Pl.'s SOAF ¶ 4; Wojtanek Aff. ¶ 33.)  Even if Wojtanek had established their involvement in his termination, these comments alone would be insufficient to establish direct evidence of age discrimination, especially when viewed in the context of Wojtanek's well-documented disciplinary record.  *See Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir.1997) (finding that suggestion of retirement did not alone give rise to an inference of discrimination, where it was made after plaintiff was found to have engaged in improper conduct); *but see, id.* at 263 (noting that "hounding" an employee about retirement may permit a jury to infer discrimination).

As for unfair treatment to other employees in the protected class, Wojtanek has alleged that Consolidated mistreated and fired a number of older employees, and replaced them with younger employees.  (Def.'s SOF ¶ 38-60; Wojtanek Dep. Ex. 14 at 12-14.)  However, as Consolidated points out, Wojtanek has provided no support for these allegations other than inadmissable hearsay and speculation.  (*See, e.g.,* Pl.'s Resp. to Def.'s SOF ¶¶ 38-60, citing no supporting documents.)  Wojtanek also admitted at his deposition that he had no personal knowledge regarding each of the older employee's alleged termination.  (*See* Def.'s SOF ¶¶ 38-60, citing Pl.'s Dep. Tr. )  In the face of the declaration of Mike Ross, who explains the actual circumstances surrounding any terminations, resignations, or transfers of those employees, Wojtanek's

---

[10] To the extent that Wojtanek would argue that Ward, served merely as a "cat's paw," (an unbiased decision maker who is being used as a tool by a biased employee; here, Jacob) that argument would also fail.  *See Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010) (merely showing that the biased employee uttered offensive slurs, does not establish that she manipulated the decision maker).

unsupported allegations fall short.[11]  *See Karazanos*, 948 F.2d at 337 (7th Cir. 1991) (noting that affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment).  As we explain below, Wojtanek's allegations of younger employees receiving more favorable treatment are similarly flawed.

For all of these reasons, we conclude that Wojtanek has failed to present a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination.  *Isbell*, 418 F.3d at 794.  We turn to the indirect method.

## 2. Indirect method

To survive summary judgment under the indirect method, Wojtanek must first establish a prima facie case of age discrimination by showing that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably than he.  *Farr v. St. Francis Hosp. & Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009).  If Wojtanek establishes a prima facie case, the burden shifts to Consolidated to "produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).  If Consolidated establishes its burden, Wojtanek must demonstrate that the reasons offered were a pretext for discrimination.  *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 627 F.3d

---

[11] According to Ross, Spialek was terminated when his position was eliminated; Stoops was transferred to another facility with no change in his compensation or benefits; Reyna voluntarily retired; Jacob left by mutual agreement; Giovenco resigned due to family obligations, and Kaczor was terminated after reaching the fourth step of the progressive disciplinary policy for a safety violation.  Ross Decl. ¶¶ 28, 30-31, 33-35.)  Consolidated had no record of a "Brad" or "Kovitz."  (*Id.* ¶¶ 29, 32.)

596, 600 (7th Cir. 2010). Summary judgment is appropriate if the employee fails to establish any of the elements of the prima facie case. *Atanus*, 520 F.3d at 673.

As we have already resolved the third prong in plaintiff's favor, (and plaintiff undoubtedly satisfies the first), left at issue here are the second and fourth prongs of the indirect method test. We easily conclude that plaintiff cannot satisfy the second prong given his spotted disciplinary record. Although Wojtanek attempts to dispute some of the disciplinary actions taken against him, he has failed to provide the Court with a "detailed refutation" of any of them and offers little more than his own opinion that he was a stellar employee. *See Gillespie v. Potter*, No. 10 C 2247, 2011 WL 3510925 (N.D. Ill. Aug. 10, 2011) (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460–61 (7th Cir.1994) (detailed refutation of events which underlie the employer's negative performance assessment creates a factual issue of whether employer's explanation is credible or merely a pretext for discrimination)); *see also, Williams v. Seniff,* 342 F.3d 774, 789 (7th Cir. 2003) (noting that absent personal knowledge or sufficient evidence, "an employee's self-serving statements about his ability are insufficient to contradict an employer's negative assessment of that ability.").

Further, Wojtanek testified that he had no reason to doubt that his second disciplinary action was an inaccurate depiction of his performance. (Wojtanek Dep. Tr. 25.) He also admitted that he did in fact spend three hours trying to repair the trimmer. (*Id.* at 93.) To the extent that Wojtanek alleges that the July 28, 2006 fluorine incident was a result of sabotage, he has provided nothing but inadmissible hearsay to support that allegation. (*See* Wotanek Aff. ¶ 30; Wojtanek Dep. Tr. 314-315.)

We also note that Wojtanek fails to satisfy the "similarly situated" prong. To do

so, the younger employees who received more favorable treatment must be "directly comparable in all material respects." *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004). "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no differentiating or mitigating circumstances as would distinguish the employer's treatment of them." *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005). Again, Wojtanek has provided nothing more than conclusory statements regarding preferential treatment towards younger employees.[12] In fact, when pressed for more information at his deposition, he could not name specific younger individuals who received benefits that he supposedly did not. (Wojtanek Dep Tr. 234, 237, 240, 283.) Such vague allegations are insufficient to satisfy the "similarly situated" prong.

Even if Wojtanek could satisfy a *prima facie* case of discrimination, Consolidated has offered sufficient evidence to support a legitimate reason for termination, namely his poor performance and violation of company rules. We note that we need not ask whether Consolidated made the correct decision. *See Ineichen*, 410 F.3d at 961 ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee."). Instead, we need only ask whether the proffered reason was pretextual. *Id.* Here, where Wojtanek has offered no evidence to support a finding of pretext, we answer that question in the negative.

---

[12] For example, in his SOAF, Wojtanek states generally, "The GPMs ages 30 and 40 violated the Consolidated Rules, committed gross misconduct, and were not suspended, they receives promotion [sic]." (Pl.'s SOAF, ¶ 32.) *See also*, Pl.'s Mem. at 8, "Juan Perez Jr., age 32, GPM, was treated with respect and dignity."

Lastly, we note that two additional facts suggest a lack of discrimination. First, Wojtanek was initially hired when he was 61. Given that Consolidated hired Wojtanek when he was 21 years into the protected class, and allegedly fired him only four years later, "the court can infer that his later firing was not due to his age." *Ritter v. Hill 'N Dale Farm, Inc.,* 231 F.3d 1039, 1044 (7th Cir. 2000). Second, despite Wojtanek's prior allegations that he was replaced by Juan Perez Jr., who is outside the protected class, the undisputed evidence shows that he was in fact replaced by Giovenco, who is one year older than plaintiff. While such facts do not foreclose a finding of discrimination, "they do create an inference of nondiscrimination," particularly on the record before us. *Id.*

For all of these reasons, Wojtanek has failed to meet his burden under the indirect method. As such, defendant's motion is granted with respect to plaintiff's termination claim.

### C.    Plaintiff's Harassment Claim

Plaintiff has also alleged age-based harassment primarily at the hands of his supervisor, Jacob. According to Wojtanek, he was subjected to slavery-like treatment and a hazardous work environment. (Wojtanek Aff. ¶ 15.) Specifically, Wojtanek has alleged, among other things, that (1) Ward and Jacob ordered him to pick up spider webs, dead insects and cigarette butts; (2) he was left alone to shut down the plant; (3) he was denied time off; (4) that Jacob allegedly pulled his shirt and yelled at him when he could not fix a machine; (5) that Jacob pointed a knife at his stomach and a steel bar in his crotch; (6) that Jacob drew a vulgar picture and placed Wojtanek's name on it; and (7) that Jacob often degraded him and called him names. (*See* Def.'s SOF ¶ 72;

Wojtanek Aff. ¶ 30; Pl's SOAF ¶ 18; *see also* Pl.'s SOAF Ex. 8-B - 8/22/11 letter to President Jeffrey Green describing harassment.)

Defendant first argues that plaintiff's harassment claim must be dismissed because he failed to include that claim in his IDHR charge. It is well settled that a plaintiff must file a charge at the administrative level before filing a complaint alleging a violation of the ADEA in federal court. *Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). "To determine whether [the plaintiff] failed to exhaust his administrative remedy, courts typically apply the 'expected scope of investigation test,' which determines whether a plaintiff alleged sufficient facts in her EEOC complaint to put the EEOC on notice of the other claim." *Jones v. Illinois,* No. 10 C 7200, 2011 WL 2110278, at *5 (N.D. Ill. May 25, 2011). In doing so, the pertinent question is "whether the charge that was timely filed was sufficiently broad to include the claims the plaintiff later raises in court." *Ajayi*, 336 F.3d at 527.

Here, Wojtanek's IDHR charge certainly did not allege the breadth of harassment now before this Court. However, Wojtanek did specifically name Jacob and alleged that he "got in the way," disturbed his work, and sabotaged his equipment. (*See* "Charge of Discrimination", attached to Pl.'s Compl.) Because we must liberally construe the administrative charge, "so that courts may also consider claims that are reasonably related to or grow out of [that charge]," *see Jones*, 2011 WL 2110278, at *5, we conclude that plaintiff exhausted his administrative remedies and will consider his harassment claim on the merits.[13]

---

[13] We do not reach the same conclusion with respect to plaintiff's claim of "fraud and conspiracy with Union." (Pl.'s Compl. ¶ 12(h).) Plaintiff's IDHR charge makes no mention of such a claim and, as

To survive summary judgment on his harassment claim, Wojtanek must prove that (1) the work environment was both subjectively and objectively offensive; (2) his age was the cause of that harassment; (3) the conduct was severe or pervasive; and (4) there was a basis for employer liability. *See Montgomery v. Am. Airlines*, 626 F.3d 382, 390 (7th Cir. 2010).

On the record before us, we disagree with Consolidated that the alleged harassment does not rise to the level of actionable conduct. Accepting Wojtanek's allegations as true, he has described an environment in which he was not only degraded and humiliated, but threatened physically. *See Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (noting that to be actionable, harassment must be "severe and pervasive"). Where Wojtanek's harassment claim falls short, however, is that he has failed to show that Jacob's offensive treatment was a result of his age. Instead, it appears that Wojtanek and Jacob simply did not get along. This is illustrated by Wojtanek's testimony that no other GPM's, young or old, suffered the same malicious treatment. (*See* Def.'s SOF ¶¶ 73-79; *see also* Wojtanek Aff. ¶ 30.) Absent evidence of a connection between the alleged harassment and plaintiff's age, such a personality conflict is not actionable. *See Uguroglu v. Gutierrez*, No. 2007 WL 2738647, at *5 (N.D. Ill., Sept. 11, 2007); *see also; Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652 (7th Cir. 2011), *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("A personality conflict doesn't ripen into an ADA claim simply

---

such, that claim is not properly before this Court and is dismissed. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).

because one of the parties has a disability."). Therefore, defendant's motion is granted with respect to Wojtanek's harassment claim.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment [89] is granted. Judgment is entered in favor of defendant and against plaintiff. It is so ordered.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: September 12, 2011**